UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RALPH STEGALL,

                 Petitioner,                       Case Number 2:10-CV-14201
                                                   Honorable David M. Lawson

v.

CATHERINE BAUMAN,

                 Respondent,

_____/

## **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      Petitioner Ralph Stegall was convicted by a Wayne County, Michigan jury of kidnapping and first-degree criminal sexual conduct, and he was sentenced to prison terms of at least 29 years. After his state appellate and post-judgment proceedings yielded him no relief, he filed the present *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. He has raised several challenges to the validity of his convictions and sentences, but because none has merit, the Court will deny the petition.

<div align="center">I.</div>

      The Michigan Court of Appeals summarized the basic facts of the case as follows:

> Defendant's convictions stem from his protracted assault of the victim. Defendant kidnapped the victim at gunpoint and drove her to a house. With the assistance of a woman present in the home, defendant proceeded to sexually assault the victim for approximately 4-1/2 hours. Defendant eventually instructed the victim to clean herself in the bathroom; the victim pretended to do so and put on her clothes. Although defendant offered to drop the victim off somewhere, she fled when he went to the driver's side door of his truck.

*People v. Stegall*, No. 288703, 2010 WL 395751, at *1 (Mich. Ct. App. Feb. 4, 2010).

      The state prosecutor charged the petitioner with one count each of kidnapping and armed robbery, and six counts of first-degree criminal sexual conduct, even though there were only two

discrete acts of sexual penetration. The State contended that each act of penetration supported three ways of violating the criminal statute. The jury convicted the petitioner of kidnapping and all six counts, and he was sentenced to concurrent prison terms of 29 to 50.

On direct appeal, the court of appeals vacated four of the criminal conduct convictions, on the ground that convicting the petitioner six times under three alternate theories for two counts of sexual penetration violated the Double Jeopardy Clause. *Stegall*, 2010 WL 395751, at *2-3. Otherwise, the convictions and sentences were affirmed. *Ibid.* The Michigan Supreme Court denied leave to appeal. *People v. Stegall,* 486 Mich. 1048, 783 N.W.2d 366 (2010) (table).

The petitioner filed a petition for writ of habeas corpus, which was held in abeyance so that the petitioner could return to the state courts to exhaust additional claims. He filed a post-conviction motion for relief from judgment in the trial court, which was denied. He then filed a motion for reconsideration and "articulation," which the judge construed as a successive motion for relief from judgment and denied under Michigan Court Rule 6.502(G), which bars filing successive motions for relief from judgment in the absence of newly discovered evidence or a retroactive change in the law. *People v. Stegall,* No. 08-008387-01 (Third Jud. Cir. Ct. Aug. 2, 2013).

The Michigan appellate courts denied the petitioner leave to appeal from the denial of his post-conviction motions. *People v. Stegall,* No. 318249 (Mich. Ct. App. Mar. 17, 2014); *lv. den.* 497 Mich. 902, 856 N.W.2d 14 (2014) (table); *recon. den.* 497 Mich. 985, 861 N.W.2d 18 (2015) (table). The petitioner filed another post-conviction motion for relief from judgment, which was denied. *People v. Stegall,* No. 08-008387-01 (Third Jud. Cir. Ct. Mar. 25, 2015).

On June 9, 2015, this Court reopened the case, denied the petitioner's motion for another stay, and permitted him to file an amended habeas petition. In his original (claims I through III) and

amended (claims IV through VII) habeas petitions, the petitioner seeks relief on the following grounds:

> I. Abuse of discretion. The trial court reversibly erred in overruling a timely defense objection to Sergeant Decker being allowed to state his personal opinion to the jury that appellant lied about the cause of his injury.
>
> II. Violation of the protection against double jeopardy.
>
> III. Legal sufficiency of the evidence.
>
> IV. Whether the Court of Appeals' ruling of Sgt. Decker's hearsay opinion testimony assisted the jury in determining a fact in issue, that [Stegall] had a gun in the time frame [the victim] alleged she was kidnapped and assaulted was unreasonable and rose to the level of a constitutional violation.
>
> V. [Stegall] did not receive the effective assistance of trial counsel when counsel chose a defense supported by minimal quality of evidence while ignoring a defense that could have been supported by a substantial amount of evidence.
>
> VI. Whether the trial court erred by admitting evidence of prior bad acts, and whether the prosecutor abused her discretion in overcharging petitioner in violation of the Fourteenth and Fifteenth Amendments.
>
> VII. Whether [the] trial court abused its discretion by denying [Stegall's] motions for relief from judgment, and ruling that [Stegall's] separate motions were successive motions under MCR 6.502(G).

Pet. at 4, 6, 7; amend. pet. at 1, 3, 13, 15.

The respondent filed an answer to the petition raising the defenses of procedural default and untimeliness. The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The untimeliness argument references the requirement that a habeas petitioner must bring his claims within one year of the date his conviction becomes final. *See* 28 U.S.C. 2244(d)(1). In this case, although the petition was stayed in this Court, the petitioner was late with his post-

conviction motion filing in state court after the stay was issued. The Court finds it unnecessary to address these procedural questions. They are not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (procedural default); *Smith v. State of Ohio Dept. of Rehabilitation*, 463 F. 3d 426, 429, n.2 (6th Cir. 2006) (statute of limitations), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). These procedural defenses will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Because Stegall filed his petition after the AEDPA's effective date, its standard of review applies. Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, ---, 134 S. Ct. 1697, 1702 (2014)

-4-

(internal quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 841 (6th Cir. 2017); *Dewald v. Wriggelsworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

A.

The petitioner argues in his first and fourth claims that his right to a fair trial was violated when Sergeant Eric Decker was permitted to offer opinion testimony that he did not believe the petitioner's claim that he had been shot during an unrelated armed robbery, which occurred around the timeframe of the kidnapping and assault in this case. Decker testified that on September 19, 2007, he was dispatched to St. John's Hospital in Detroit on a report of a shooting. Decker met with the petitioner, who told him that he had been shot during an armed robbery. Decker testified that his conversations with the petitioner, reports of other witnesses and officers, and his observation of the petitioner's vehicle caused him to doubt the truth of the petitioner's story that he had been shot during an armed robbery. Decker then testified that he confronted the petitioner, who admitted that he shot himself with a handgun, and he told Decker where he could find the gun. Sergeant Decker accompanied the petitioner to a home, where he recovered a handgun.

The Michigan Court of Appeals, reviewing the claim for plain error, found that Decker's testimony was admissible lay opinion testimony under Michigan Rule of Evidence 701, because it was based on his own perceptions and was relevant to whether the petitioner had access to a handgun during the time when he kidnapped and sexually assaulted the victim. *People v. Stegall*, 2010 WL 395751, at * 1.

The petitioner raised this issue on direct appeal, and he repeats the argument here, based entirely on state evidence law. He alleges in his fourth claim that the admission of Decker's testimony "rose to the level of a constitutional violation," but he does not explain how that is so. Errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of*

*Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *Estelle*, 502 U.S. at 69-70, 112 S.Ct. 475); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The Michigan Court of Appeals concluded that Sergeant Decker's testimony was permissible lay opinion under state evidentiary law. Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (*quoting Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)).

*Cooper v. Sowders*, 837 F.2d 284 (6th Cir. 1988), a pre-AEDPA case, does not require a different result. There, the court held that permitting a detective to testify as an expert witness that all the evidence linked the petitioner, and no one else, to the crime was fundamentally unfair and a violation of due process. The testimony in that case differed remarkably from Decker's testimony at the petitioner's trial; in *Cooper*, the detective, identified as an "expert," was permitted to comment on all the evidence and draw inferences that properly should have been left to the jury. Here, Decker was not identified as an expert of any kind, and the jurors were instructed to assess his credibility as they would any other witness. *Cooper* has not been held out as a means of converting state evidentiary issues into constitutional claims. To the contrary, it is an exception to the general rule

noted above, and applies only in exceptional cases, which the present case is not. *See Dorsey v. Banks*, 749 F. Supp. 2d 715, 738 (S.D. Ohio 2010).

The petitioner is not entitled to habeas relief on his first or fourth claims.

B.

The petitioner alleges in his second claim that his conviction of all six criminal sexual conduct charges violated his right under the Double Jeopardy Clause. But that claim was resolved by the state court of appeals, when it vacated four of those convictions. Unless there is some lingering collateral consequence to the vacated convictions — and Stegall has identified none — the issue is moot and beyond the power of the Court to address. *Witzke v. Brewer*, 849 F.3d 338, 340 (6th Cir. 2017) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)).

For the same reason, the petitioner's third argument that the evidence was not sufficient to support six criminal sexual conduct convictions when there were only two acts of penetration is also moot. Vacating four of those convictions provided the petitioner with all the relief he could have hoped for by raising that issue. Federal courts may review only actual cases or controversies, U.S. Const. art. III, § 2, cl. 1, and therefore the Court "ha[s] no power to adjudicate disputes which are moot," *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc) (quoting *Crane v. Ind. High Sch. Athletic Ass'n*, 975 F.2d 1315, 1318 (7th Cir. 1992)). There must be an actual controversy at all stages of the case, not merely at the outset. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) ("[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.") (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).

The petitioner also argues as part of his second claim that his sentencing guidelines were incorrectly scored because the trial judge included an enhancement under one of the offense variables. Claims that arise out of a state trial court's sentencing decision are not cognizable upon federal habeas review unless the petitioner can show that the sentence exceeded the statutory limits or is wholly unauthorized by law. *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001); *see Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *see also Cheatham v. Hosey*, 12 F.3d 211, 1993 WL 478854, *2 (6th Cir. Nov. 19, 1993) (departure from state sentencing guidelines is a state law issue, which is not cognizable on federal habeas review). The petitioner's sentence is within the statutory maximum for kidnapping and first-degree criminal sexual conduct. *See* Mich. Comp. Laws §§ 750.349; 750.520b(2)(a). A sentence imposed within the statutory limits is generally not subject to federal habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

The petitioner's second and third claims do not warrant relief.

## C.

As part of his fourth claim, the petitioner argues additionally that his due process rights were violated when the trial judge denied the jurors' request to have the victim's testimony read back to them after they had begun deliberations. He is not entitled to relief on this claim because he has not pointed to any Supreme Court case that clearly establishes a right to that procedure. *See Friday v. Straub,* 175 F. Supp. 2d 933, 939 (E.D. Mich. 2001); 28 U.S.C. §2254(d)(1). Certainly, there are federal cases that discuss the propriety of responding to jury requests to re-hear witness testimony. But none of those cases address the issue in federal constitutional terms. *See Bradley v. Birkett*, 192

F. App'x 468, 477 (6th Cir. 2006) ("Those federal cases that discuss the issue of readbacks and transcript availability do so under the rubric of the court's supervisory authority over federal criminal trials, not on constitutional principles, and in any event do not establish a uniform rule.").

There also may be state law that governs that practice. But, as noted above, "federal habeas corpus relief does not lie for errors of state law." *Ibid.* (quoting *Estelle*, 502 U.S. at 67).

## D.

Also part of the fourth claim is the argument that the petitioner was denied access to material that might have proven his innocence.

It is well established that suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). There are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

The petitioner has failed to offer any evidence or argument to show that the prosecution suppressed any evidence that contained exculpatory material. It is his burden to prove that evidence required to be disclosed to him under *Brady* was not turned over. *Coe v. Bell*, 161 F. 3d 320, 344 (6th Cir. 1998). Allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. *Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004). "[M]ere speculation that a government file may contain *Brady* material is not sufficient" to prove a

due-process violation. *United States v. Driscoll*, 970 F.2d 1472, 1482 (6th Cir.1992), *abrogated on other grounds by Hampton v. United States*, 191 F.3d 695 (6th Cir. 1999). The petitioner has failed to show that any evidence exculpated him of this crime or cast doubt upon the confidence in the outcome of the case. The petitioner therefore is not entitled to habeas relief on his *Brady* claim.

E.

As part of his sixth claim, the petitioner contends that his due process rights were violated by the admission of other acts evidence involving testimony from two other women who testified that they had been sexually assaulted by the petitioner. The trial judge admitted that evidence under Michigan evidence rule 404(b).

An alleged violation of state evidence rule 404(b) is not cognizable on habeas review. "[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). The Supreme Court has declined to hold that the admission of "other acts" evidence is so extremely unfair that it violates fundamental conceptions of justice. *Dowling v. United States*, 493 U.S. 342, 352-53 (1990). The Court has discussed when other acts testimony is permissible under the Federal Rules of Evidence, *see Huddleston v. United States*, 485 U.S. 681 (1988), but has not addressed the issue in constitutional terms. Such matters are more appropriately addressed in codes of evidence and procedure than under the Due Process Clause. *Dowling*, 493 U.S. at 352. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also Bey v. Bagley*, 500 F.3d

514, 519 (6th Cir. 2007). Consequently, there is no "clearly established federal law" to which the state court's decision could be "contrary" within the meaning of section 2254(d)(1). *Bugh*, 329 F.3d at 512-13. Therefore, the Court must deny habeas relief on this claim.

## F.

As part of his sixth claim, the petitioner complains that the prosecutor overcharged him after he refused to accept a plea bargain offer with a sentence cap of seven to ten years. The petitioner does not indicate which of the charges filed by the prosecutor were improper.

It is "'patently unconstitutional'" for a prosecutor to pursue a course of action whose objective is to penalize a criminal defendant's reliance on his protected statutory or constitutional rights. *See United States v. Goodwin*, 457 U.S. 368, 372 n.4 (1982) (*quoting Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). "A prosecutor vindictively prosecutes a person when he or she acts to deter the exercise of a protected right by the person prosecuted." *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir.1991). Therefore, "a criminal prosecution which would not have been initiated but for vindictiveness is constitutionally prohibited." *Bragan v. Poindexter,* 249 F.3d 476, 481 (6th Cir. 2001) (citing *United States v. Adams*, 870 F. 2d 1140, 1145 (6th Cir.1989) (*quoting Blackledge v. Perry*, 417 U.S. 21, 27-28 (1974)).

However, the Due Process Clause does not prohibit a prosecutor from carrying out a threat made during plea negotiations to bring additional charges against a criminal defendant who refuses to plead guilty to the offenses for which he was originally charged. *Bordenkircher*, 434 U.S. at 363. When negotiating a guilty plea agreement, "there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Ibid.* In *United States v. Goodwin*, the Supreme Court commented:

> In declining to apply a presumption of vindictiveness, the Court recognized that "additional" charges obtained by a prosecutor could not necessarily be characterized as an impermissible "penalty ." Since charges brought in an original indictment may be abandoned by the prosecutor in the course of plea negotiation — in often what is clearly a "benefit" to the defendant — changes in the charging decision that occur in the context of plea negotiation are an inaccurate measure of improper prosecutorial "vindictiveness." An initial indictment — from which the prosecutor embarks on a course of plea negotiation — does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.

*Goodwin*, 457 U.S. at 378-80.  Therefore, "the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified."  *Id* . at 382-83.

The Sixth Circuit has consistently held that the pretrial addition of criminal charges against a defendant after he refuses to plead guilty does not amount to vindictive prosecution.  *See, e.g.*, *United States v. DeJohn*, 368 F.3d 533, 545 (6th Cir. 2004); *United States v. Walls*, 293 F.3d 959, 970 (6th Cir. 2002).  Indeed, a prosecutor may hold some potential charges in abeyance as an inducement during plea bargain negotiations without being considered vindictive, as long as the additional charges are supported by probable cause.  *See United States v. Suarez*, 263 F.3d 468, 480 (6th Cir. 2001).

Nonetheless, a criminal defendant may prove prosecutorial vindictiveness by one of two methods.  First, a defendant may demonstrate "actual vindictiveness" by establishing "through objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights."  *Bragan*, 249 F.3d at 481 (citing *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987) (citing *Goodwin*, 457 U.S. at 380-81, 384 & n.19)).  That showing, however, is "exceedingly difficult to make."  *Ibid.* (quoting *Meyer*, 810 F.2d at 1245).  Second, a defendant may show that

there existed a "'realistic likelihood of vindictiveness'" in the prosecutor's actions in the defendant's particular case. *Ibid.* (quoting *United States v. Andrews*, 633 F.2d 449, 453 (6th Cir. 1980)). "A court may only presume an improper vindictive motive when a reasonable likelihood of vindictiveness exists." *Ibid.* (citing *Goodwin*, 457 U.S. at 373). A habeas petitioner must show that (1) the prosecutor had "some 'stake' in deterring the petitioner's exercise of his rights, and (2) the prosecutor's conduct was somehow 'unreasonable.'" *Id.* at 482 (quoting *Anderson*, 923 F.2d at 453-54).

The petitioner here has not shown unconstitutional conduct by the prosecutor under either of these routes. He states only that the prosecutor "overcharged" him after he declined to plead guilty. He has not specified which charges were improper. And as noted above, the addition of charges when a defendant refuses to accept a plea bargain is not vindictive. The petitioner is not entitled to relief on his sixth claim.

## G.

The petitioner argues in his fifth claim that he was denied the effective assistance of trial counsel because of the way trial counsel dealt with the admission of a DNA report, his failure to seek an additional competency evaluation, his failure to call certain witnesses, and his failure to object when the trial judge refused to read back certain trial testimony to the jury. In his fourth through sixth claims, the petitioner alleges that appellate counsel was ineffective by failing to raise various claims on his direct appeal.

A violation of the Sixth Amendment right to effective assistance of counsel is established when an attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if

"counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Success on ineffective-assistance-of-counsel claims is relatively rare, because the standard for obtaining habeas corpus relief "is 'difficult to meet.'" *Woodall*, 134 S.Ct. at 1702 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (quoting *Richter*, 562 U.S. at 102)). The standard is "all the more difficult" on habeas corpus review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (citations and quotation marks omitted). "[T]he question is not whether

counsel' actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Ibid.*

1.

The petitioner's first criticism of his attorney's performance focuses on his decision to stipulate to the admissibility of a report prepared by a laboratory technician on the results of DNA testing, and his failure to hire an independent expert. The report stated that the tested samples showed a consistency of the petitioner's DNA found from evidence collected from the victim in this case and the two other victims. Trial counsel stipulated to the report because the defense was that the victim consented to have sex with the petitioner.

Later, during closing arguments, when the prosecutor argued that the petitioner's DNA was recovered from the victim's sexual assault kit, defense counsel objected and stated that he only stipulated that if the person or persons who signed the DNA report were to testify, they would testify that the report did not indicate that it was the petitioner's DNA that was recovered although they could also not exclude him as a donor. The judge did not rule on the objection and the prosecutor continued arguing that the petitioner's DNA was recovered from a rectal swab. Neither party has provided this Court with a copy of the forensic report, so it is not clear whether the state's DNA expert positively matched the petitioner's DNA with that of the donor in the victim's case or merely indicated that he could not exclude the petitioner as being the donor. It is worth noting, however, that the Michigan Court of Appeals, in reviewing the petitioner's first claim for plain error, and finding none, described "the parties' stipulation to the admission of scientific evidence linking defendant's deoxyribonucleic acid (DNA) profile to his assaults of the instant victim and the other acts victims." *People v. Stegall*, 2010 WL 395751, at * 1.

The petitioner has not suggested any basis to conclude that the state DNA expert's report was inaccurate or that the expert would testify differently had he been called to testify. The petitioner has also failed to show that he had an independent expert who would have testified that he was not the donor of the DNA recovered in this case. Moreover, although the petitioner did not testify at trial, at sentencing he informed the judge that "these incidents with these women was consensual." That statement was consistent with the information he presumably conveyed to defense counsel. Based on that information — that the petitioner had consensual sex with the victim — trial counsel reasonably could have determined that the DNA recovered from the victim would be the petitioner's and it would thus be unnecessary to call the forensic expert in order to challenge his findings or engage an independent expert to challenge the state DNA expert's forensic report. That strategic decision did not amount to deficient performance.

As a related claim, the petitioner contends that trial counsel was ineffective by pursuing a consent defense rather than challenging the DNA results and arguing that the petitioner was not the perpetrator. But that decision is the quintessential strategic choice that courts will not gainsay. A criminal trial frequently requires defense counsel to make a number of strategic decisions. Where two reasonable but divergent paths are presented, reviewing courts studiously avoid second-guessing counsel's choices. In fact, *Strickland* requires a reviewing court to presume that defense counsel's conduct was not the product of deficient performance. "To counteract the natural tendency to fault an unsuccessful defense, a court reviewing an ineffective assistance of counsel claim must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Nix v. Whiteside*, 475 U.S. 157, 165 (1986) (quoting *Strickland*, 466 U.S. at 689); *see also Griffin v. McVicar*, 84 F.3d 880, 888 (7th Cir. 1996) ("[T]he mere fact that a defendant chooses

one of two available defenses cannot establish ineffective assistance of counsel, even if the defendant makes a bad choice."). The reasonableness of that strategic choice is bolstered here by the petitioner's declaration at sentencing that he had sex with those women and that it was consensual. There was no deficient performance shown here.

2.

The petitioner next contends that trial counsel was ineffective when he accepted the report of a psychologist that the petitioner was competent to stand trial, and did not seek a second opinion. At the petitioner's preliminary examination, the petitioner's original attorney requested a competency evaluation, which the court ordered. Trial counsel (the petitioner's second attorney) stipulated to the forensic report indicating that the petitioner was competent to stand trial. In support of his claim that counsel should not have done that, the petitioner points to an affidavit from his sister dated November 12, 2014, in which she avers that the petitioner appeared "confused and disoriented" when she visited him in jail in early 2008, shortly after his arrest.

The Supreme Court has consistently held that "the criminal trial of an incompetent defendant violates due process." *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (citing *Medina v. California*, 505 U.S. 437, 453 (1992); *Drope v. Missouri*, 420 U.S. 162, 171-172 (1975); *Pate v. Robinson*, 383 U.S. 375, 378 (1966)). And "[a]n attorney has a professional duty to question a defendant's competency to stand trial if they have [sic] a good faith doubt as to the defendant's competence." *Watkins v. Haas,* 143 F. Supp. 3d 632, 641 (E.D. Mich. 2015), *rev'd on other grounds*, *Watkins v. Deangelo-Kipp*, 854 F.3d 846 (6th Cir. 2017) (citing *United States v. Jackson*, 179 F. App'x. 921, 933 (6th Cir. 2006)). Moreover, "[a] criminal defense lawyer has a continuing duty to request a competency evaluation of a criminal defendant if he or she becomes aware of facts that raise a doubt

-18-

as to the competency of a defendant during any stage of the criminal proceedings." *Ibid.* (citing *Williamson v. Ward*, 110 F.3d 1508, 1517-18 (10th Cir. 1997)).

But here, after the petitioner's first attorney requested a competency evaluation, the forensic examiner determined that the petitioner was competent to stand trial. Nothing in the trial record shows that the petitioner was mentally incompetent, acted irrationally, or otherwise was unable to communicate with the court or his attorney. The trial and sentencing record, in fact, suggests the opposite. *See* Trial Tr. at 6-7, 15-16 (Sept. 17, 2008); 72-73 (Sept. 18, 2008); Sent. Hr'g 14-17 (Oct. 7, 2008). Nor has the petitioner presented evidence that he had a history of psychiatric problems. There is nothing in the record of the trial or post-conviction proceedings that would have put defense counsel on notice that he should have revisited the competency issue. Defense counsel did not perform deficiently by accepting the report of the forensic psychologist, or by not pursuing the competency question further.

### 3.

The petitioner next contends that trial counsel was ineffective because he did not call several witnesses that were mentioned in a police report. It is difficult to evaluate this claim, because the petitioner did not attach any affidavits from these witnesses in the state court proceedings, nor has he provided this Court with any affidavits from these witnesses that described their proposed testimony and willingness to testify on the petitioner's behalf. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).

By failing to present any evidence to the state courts in support of this ineffective assistance of claim, the petitioner has not furnished any basis to evaluate the soundness of his argument, or to

determine if the state courts misapplied federal law. He is not entitled to an evidentiary hearing on this ineffective assistance of counsel claim in this Court. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)). In the absence of proof, the petitioner is unable to establish that he was prejudiced by counsel's failure to call those witnesses to testify at trial, and therefore cannot support the second part of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551, 557 (6th Cir. 2007).

4.

The petitioner's last criticism of trial counsel is that he failed to object to the trial judge's refusal to read back the victim's testimony. But that decision falls into the category of trial strategy. Trial counsel may have preferred that the jury not re-hear the victim's testimony. *See Bradley,* 192 F. App'x. at 477. And since the trial court judge stated that he chose not to read back the victim's testimony at that point, the petitioner is unable to show that there would have been a different outcome in the trial had counsel objected to the judge's ruling about re-reading the victim's testimony. *Ibid.*

5.

The petitioner contends that appellate counsel was ineffective by failing to raise his fourth through sixth claims on his appeal of right. The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To prevail on a claim of ineffective assistance of appellate counsel, the petitioner ordinarily must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the appeal. *Strickland*, 466 U.S. at 687. However, it is well established that

a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).

This Court has already determined that the petitioner's fourth through sixth claims lack merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because none of these claims can be shown to be meritorious, appellate counsel was not ineffective in her handling of petitioner's direct appeal. The petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

## H.

In his seventh claim, the petitioner contends that the trial and appellate courts improperly recharacterized his motion for articulation as a second motion for relief from judgment and denied it under Michigan Court Rule 6.502(G), which prohibits second or successive motions for relief from judgment unless there has been newly discovered evidence or a retroactive change in the law.

No federal constitutional rights are implicated by this claim. Federal courts do not provide relief under 28 U.S.C. § 2254 for alleged errors of that type. "[T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007). The Supreme Court has held that states have no constitutional obligation to provide post-conviction remedies. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987). Based on that holding, the Sixth Circuit has reasoned that "habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief." *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001); *see also Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986)

(holding that habeas corpus is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings).

The petitioner is not entitled to relief on his seventh claim.

III.

The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition and amended petition for a writ of habeas corpus are **DENIED.**

s/David M. Lawson

DAVID M. LAWSON
United States District Judge

Dated: July 11, 2018

<div style="border:1px solid black;">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 11, 2018.

s/Susan Pinkowski

SUSAN PINKOWSKI

</div>